# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 21, 2011          Decided April 26, 2011

No. 09-5448

FORSYTH MEMORIAL HOSPITAL, INC., ET AL.,
APPELLANTS

v.

KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN
SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01828)

*Robert E. Mazer* argued the cause and filed the briefs for appellants. *Harold G. Belkowitz* and *James P. Holloway* entered appearances.

*Joel McElvain*, Senior Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, *Michael S. Raab*, Attorney, and *Janice Hoffman*, Associate General Counsel, U.S. Department of Health & Human Services.

Before: SENTELLE, *Chief Judge*, HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*:  Forsyth Memorial Hospital, Inc., and other medical providers (collectively, "appellants") appeal from the district court's grant of summary judgment in favor of the Secretary of Health and Human Services (respectively, the "Secretary" and "HHS"), which upheld the denial of their reimbursement claims arising from the merger of Presbyterian Health Services Corporation ("Presbyterian") and Carolina Medicorp, Inc. ("Carolina").  Appellants argued before the district court and this court that the denial of their claims was arbitrary and capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence.  Finding no error in the district court's disposition, we affirm.

**I.**

According to the undisputed facts before the district court, prior to the events at issue in this case, Carolina was a private non-profit corporation that held title to certain land, buildings, land improvements, and fixed equipment.  Carolina leased these assets to Forsyth Memorial Hospital, Inc., Medical Park Hospital, Inc., Foundation Health Systems Corp., and Carolina Medicorp Enterprises (together, the "individual providers"), which were non-profit Medicare service providers under the control of Carolina.  The individual providers used the assets leased to them by Carolina for the provision of Medicare services.

Effective July 1, 1997, Carolina statutorily merged into Presbyterian, a previously independent corporation.  Pursuant to North Carolina law, under which the statutory merger was executed, Carolina dissolved and Presbyterian assumed all of Carolina's assets and liabilities, including its leases with the

individual providers and its land and depreciable assets. Presbyterian subsequently renamed itself Novant Health, Inc.

At the time of the merger, Carolina's known liabilities stood at $230.7 million. The value of its assets at that time is, however, disputed. No appraisal of Carolina's assets was conducted prior to the merger and Carolina did not place its assets on the open market. At the time of the merger, the net book value of Carolina's total assets—i.e., the assets' purchase price less the total depreciation already taken on them—was $399.8 million. An appraisal conducted after the merger found that Carolina's land and depreciable assets were worth $215 million.

After the merger, the individual providers sought reimbursement for approximately $11 million in losses on their depreciable assets, under 42 C.F.R. § 413.134(*l*). Blue Cross Blue Shield Association, a private intermediary designated by HHS to process the providers' claims for reimbursement, denied the claims. The individual providers appealed to the HHS Provider Reimbursement Review Board ("PRRB"), pursuant to 42 U.S.C. § 1395oo(a), which reversed the intermediary's determination and ordered reimbursement. The Administrator of the Centers for Medicare & Medicaid Services (respectively, the "Administrator" and "CMS"), which administers the Medicare Program on behalf of the Secretary and has the discretion to review any final decision of the PRRB, 42 U.S.C § 1395oo(f)(1); 42 C.F.R. § 405.1875(a)(1), reversed the PRRB's determination, finding that appellants were not entitled to reimbursement because in the merger between Carolina and Presbyterian no bona fide sale took place and the parties were related.

Pursuant to 42 U.S.C § 1395oo(f)(1), the individual providers—excluding one whose interest had passed to another

of the providers—sought judicial review of the Administrator's decision in the District Court for the District of Columbia. On cross motions for summary judgment, the district court granted summary judgment in favor of the Secretary and denied appellants' motion. *Forsyth Mem'l Hosp. Inc. v. Sebelius*, 667 F. Supp. 2d 143 (D.D.C. 2009). Appellants now appeal the district court's judgment.

## II.

Under the Social Security Act, providers of Medicare services are statutorily entitled to reimbursement for the "reasonable cost" of certain Medicare services. *See* 42 U.S.C. § 1395f(b)(1). The implementing regulations, promulgated by the Secretary as required by the Act, 42 U.S.C § 1395x(v)(1)(A); 42 U.S.C. § 1395hh, provide that "an appropriate allowance for depreciation on buildings and equipment used in the provision of patient care is an allowable cost" for which a Medicare provider can seek reimbursement. 42 C.F.R. § 413.134(a). The regulations also set forth the manner in which the appropriate allowance for such depreciable assets is determined: The "historical cost" of the asset, § 413.134(a)(2)—which is "the cost incurred by the present owner in acquiring the asset," § 413.134(b)—is "[p]rorated over the estimated useful life of the asset," § 413.134(a)(3). In most cases, the annual reimbursable cost of a depreciable asset will be the asset's "actual cost divided by the number of years of its useful life." *St. Luke's Hosp. v. Sebelius,* 611 F.3d 900, 901 (D.C. Cir. 2010).

Recognizing that the methodology for calculating reimbursable depreciation "only approximate[s] the actual decline in an asset's value," *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1262 (10th Cir. 2007), the regulations require adjustment to the allowable depreciation cost of an asset in specified circumstances. Relevant here, when a provider

disposes of a depreciable asset through sale or statutory merger, if the asset's net book value is not identical to the consideration received for the asset, a revaluation of the allowable cost is required. Upon revaluation, if the net book value is greater than the consideration received, the provider has realized a loss for which the provider may claim reimbursement. In contrast, if the net book value is less than the consideration received, the provider has realized a gain and HHS may appropriately adjust or deny reimbursement. *See* § 413.134(f), (*l*); *St. Luke's*, 611 F.3d at 901-02; *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 559 (9th Cir. 2008); *Via Christi*, 509 F.3d at 1262.

A provider may receive reimbursement for a loss on the sale of a depreciable asset by meeting additional criteria. Specifically, subsection (f) of the regulation governing depreciation mandates that a provider may be reimbursed for a loss on a sale only when the sale was a "bona fide sale." § 413.134(f); *St. Luke's,* 611 F.3d at 902. Subsection (*l*) of the same regulation, which governs revaluation of assets after their disposal through a statutory merger, does not specifically incorporate the bona-fide-sale requirement of subsection (f) but provides that compliance with subsection (f) is a prerequisite for revaluation after a statutory merger.

In a guidance document issued in October 2000, HHS clarified that subsection (*l*)'s cross reference to subsection (f) mandates that, when a corporation disposes of depreciable assets through a statutory merger, CMS will permit an adjustment to the corporation's allowable depreciation costs only if the merger constituted a "bona fide sale," as defined in the Provider Reimbursement Manual ("PRM"), or some other triggering event irrelevant here, and was consummated by "parties that are not related." Clarification of the Application of the Regulations at 42 C.F.R. § 413.134(*l*) to Mergers and Consolidations Involving Non-Profit Providers, Program Memorandum A-00-

76 (Oct. 19, 2000) (hereinafter "PM A-00-76 ").  The PRM in turn provides that a "bona fide sale contemplates an arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration" and that an "arm's length transaction is a transaction negotiated by unrelated parties, each acting in his own self interest."  PRM § 104.24.  We have previously upheld PM A-00-76's interpretation of subsection (*l*):  A statutory merger will not give rise to a reimbursable loss unless the merger constitutes a bona fide sale, and "reasonable consideration is a required element of a *bona fide* sale."  *St. Luke's*, 611 F.3d at 903-06.

### III.

Appellants ask us to reverse the district court's determination that the Administrator acted in accordance with the Administrative Procedure Act.  *See* 5 U.S.C. § 706(2).  In our review of the district court's grant of summary judgment, we consider *de novo* whether in the proceedings below there was a genuine dispute as to any material fact.  *See* Fed. R. Civ. P. 56.  When the judgment of the district court is on review of an administrative decision, our task is the same as that performed by the district judge.   In other words, we review the administrative record to determine whether the agency's decision was arbitrary and capricious, and whether its findings were based on substantial evidence. *Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C. Cir. 1997).   We therefore review the administrative record directly to determine whether the agency violated the Administrative Procedure Act by taking action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or is "unsupported by substantial evidence."  *See* 5 U.S.C. § 706(2); *Pharm. Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 821 (D.C. Cir. 2004).   If we

reach the same conclusion as the district judge, we affirm the judgment of the court.

Appellants argue that the district court should have set aside the Administrator's decision on the ground that it relies upon the interpretation of § 413.134(*l*) set forth in PM A-00-76, which appellants contend is, for multiple reasons, unlawful. Appellants make a host of arguments that the Administrator should not have applied PM A-00-76's requirement that reasonable costs be revalued after a statutory merger only if the statutory merger constituted a bona fide sale, for reasonable consideration. Because this court has previously upheld PM A-00-76 insofar as is relevant to this case, we dismiss appellants' arguments on this front. *See St. Luke's*, 611 F.3d 900. It was neither arbitrary and capricious nor contrary to law for the Administrator to apply PM A-00-76 to his analysis.

The only other question raised by this appeal is whether, on the facts of this case, the Administrator's determination that appellants were ineligible for reimbursement on their claimed depreciation losses was unsupported by substantial evidence or was otherwise arbitrary and capricious. As discussed above, the Administrator, upon review of the factual record, determined that the transaction met neither of the requirements for the reimbursement of depreciation losses: (1) the statutory merger between Carolina and Presbyterian did not constitute a bona fide sale; and (2) the parties to the transaction were related. *Carolina Medicorp '97 Claimed Loss Disallowance Group v. Blue Cross Blue Shield Ass'n*, Review of PRRB Dec. No. 2007-D42, at *26-28 (June 15, 2007) (hereinafter *Adm'r Decision*). In support of his conclusion that there was no bona fide sale, the Administrator reasoned that Carolina did not receive reasonable consideration for the sale of its assets and it did not engage in arm's length bargaining with Presbyterian. *Id.* at *27-28.

We agree with the district court that the Administrator's determination that Carolina did not receive reasonable consideration for its assets in the statutory merger with Presbyterian was supported by substantial evidence and was not otherwise arbitrary and capricious.  The record discloses that, pursuant to PM A-00-76, the Administrator conducted a comparison of the value of the assets sold and the consideration exchanged in the merger.  *Id.*  In other words, he compared the value of Carolina's assets and liabilities at the time of the merger.  Specifically, the Administrator compared the book value of Carolina's total assets ($399 million) to its known liabilities ($230 million).  *Id.*  He also compared the appraised value of Carolina's land and depreciable assets, as calculated by an appraisal conducted soon after the merger ($215 million), as well as their net book value ($139 million), with the portion of the consideration Carolina assigned to those assets ($54 million).  As a third point of comparison, the Administrator considered the net book value of Carolina's depreciable assets ($122 million) against the consideration Carolina allocated to those assets ($37 million).  *Id.* at *28.  Noting the sizable disparities between these figures, the Administrator reasonably concluded that "[t]he amount of consideration transferred and the value of the assets received does not . . . support a finding that [Carolina] transferred assets for reasonable consideration and as a result of a bona fide sale."  *Id.*

Appellants claim that the Administrator's finding on this point was unsupported by substantial evidence and was also arbitrary and capricious for several reasons.  First, they criticize the Administrator's failure to take into account that Presbyterian assumed not only Carolina's known liabilities but also its unknown liabilities.  Because Carolina's unknown liabilities might have been substantial, appellants explain, the Administrator underestimated the consideration exchanged in the statutory merger.  Appellants also argue that the

Administrator misjudged the fair market value of Carolina's assets by relying only on their net book value and appraised value, which did not reflect their true market value. Third, appellants contend that PM A-00-76 and case law require the Administrator to find that reasonable consideration was exchanged in a merger when the total consideration received by the merged entity (i.e., its liabilities) is more than the current or monetary assets it has sold. According to appellants, because Carolina received approximately $230 million as consideration, which is significantly more than the $19 million it possessed in current assets, the Administrator should have determined that Carolina received reasonable consideration.

As a preliminary note, we reject appellants' argument that PM A-00-76 or any court opinion cited by appellants may reasonably be read to compel the Administrator to find that reasonable consideration has been exchanged whenever a merged entity's current or monetary assets are less than the consideration received. Although PM A-00-76 clearly indicates that when current assets are more than the consideration received a bona fide sale has not occurred, this does not imply that the converse is true. When current and monetary assets are less than the consideration received, the Administrator must examine the merger to ensure that reasonable consideration was exchanged for *all* assets. Appellants' argument to the contrary simply makes no sense. The Administrator certainly was not arbitrary or capricious in comparing the consideration exchanged and all assets without imposing any novel framework supposedly limiting the comparison to the acquired entity's liabilities and current and monetary assets. Nor did the district court err in upholding that determination by its summary judgment.

Turning next to the figures upon which the Administrator relied in making the determination that reasonable consideration

was not exchanged in the statutory merger, we again conclude that there is no error. The burden of proof to show that a bona fide sale occurred rested on appellants. 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.24(a); *Via Christi,* 509 F.3d at 1277; *Mercy Home Health v. Leavitt*, 436 F.3d 370, 380 (3d Cir. 2006); *see also Tenet HealthSystems HealthCorp*, 254 F.3d 238, 245 (D.C. Cir. 2001). Yet, as appellants have conceded, they did not introduce or identify any evidence that reasonable consideration was indeed exchanged in the merger of Carolina and Presbyterian. They did not put forth evidence tending to show either that Carolina's unknown liabilities were likely particularly substantial, such as to approach the value of its assets, or that the net book value or appraised value of Carolina's assets inaccurately reflected their actual market value. Apart from the appraisal conducted soon after the merger, which produced one of the several figures whose accuracy appellants dispute, appellants conducted no appraisal, and they did not put Carolina's assets for sale on the open market. Given the figures before the Administrator, and in light of appellants' failure to introduce or identify any evidence tending to contradict the accuracy of those figures, the Administrator's determination was neither unsupported by substantial evidence nor arbitrary and capricious. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 366-67 (1998); *Assoc. of Data Processing Serv. Org., Inc. v. Bd. of Governors of the Fed. Res. Sys.*, 745 F.2d 677 (D.C. Cir. 1984). He did not act inappropriately in concluding that the vast disparity between Carolina's assets and liabilities did not support a finding that the merger between Carolina and Presbyterian was consummated for reasonable consideration.

Because the Administrator's finding that Carolina and Presbyterian did not exchange reasonable consideration was an independent and sufficient ground for refusing appellants their requested reimbursement, we need not and do not address the

Administrator's determinations with respect to whether the parties in the merger were related or whether they engaged in arm's length bargaining.

## IV.

For the reasons set forth above, the order of the district court is

*Affirmed.*